[No. 8924.    Department One.    September 7, 1910.]

THE STATE OF WASHINGTON, *on the Relation of James Wilson et al., Plaintiff*, v. GRAYS HARBOR & PUGET SOUND RAILWAY COMPANY *et al., Respondents.*[1]

EMINENT DOMAIN—PROPERTY SUBJECT—HARBOR AREA—PREFERENCE RIGHT TO LEASE. The preference right of abutters to lease the harbor area lying in front of tide and uplands is property or an interest in land or a "contract right relating thereto, including any leasehold interest therein," which is subject to condemnation for a railroad right of way.

Certiorari to review a judgment of the superior court for Chehalis county, Sheeks, J., entered May 20, 1910, adjudging a public use in condemnation proceedings for a railroad right of way, after a hearing on the merits before the court.   Affirmed.

*A. Emerson Cross*, for relators.

*Bridges & Bruener* (*Bogle & Spooner*, of counsel), for respondents.

MORRIS, J.—Certiorari to review a decree of appropriation, whereby respondents were permitted to condemn and appropriate relators' preference right to lease the harbor area lying in front of tide and uplands owned by relators, in and riparian to the Chehalis river at Aberdeen.   The case is similar to that of *State ex rel. Hulme v. Grays Harbor & Puget Sound R. Co.*, 54 Wash. 530, 103 Pac. 809, and most of the questions now submitted, having so recently been decided in that case, we will not again review them, except to say that we adhere to the rules there announced.   The only question submitted by relators not expressly referred to in the *Hulme* case is this contention: that the preference right to lease the harbor area is not property, nor if it be held to be property, is it such property as may be appropriated by

[1]Reported in 110 Pac. 676.

respondents for railway purposes. Relators' contention being that such preference right to lease the harbor area is merely an inchoate right, and even though it be fully exercised, the interest in the harbor area thus acquired is neither "any interest in land" nor "contract right relating thereto, including any leasehold interest therein."

In support of these contentions, relators rely upon *Allen v. Forrest*, 8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606, and *Seattle & Lake Washington Waterway Co. v. Seattle Dock Co.*, 35 Wash. 503, 77 Pac. 845. In the latter case it was held that the act of 1890, giving the improver of tide lands prior to that time a preference right of purchase, does not constitute a contract between the state and the improver giving him any vested right in such lands, but is merely a privilege. The reasoning of this case is that the act itself is not a contract, and there could be no vested right without a contract. In the *Waterway Co.* case, the rule was announced that abutters with only a preference right to purchase tide lands had no such vested right therein as would entitle them to notice respecting any improvement thereof, and the reasoning of the case is that inasmuch as it was conceded that the state was the sole and exclusive owner of the tide lands in controversy at the time of the making of the contracts, its right to make such contract could not be questioned by those having no interest in the lands and who purchased subsequent to the contract and with notice. Prior to purchase, the only right given by the state was a preference right to purchase, which, as against the state, was not a vested interest.

In the case at bar it appears that before the commencement of the proceedings in the court below, the relators had made their application to lease the harbor area lying in front of their tide and uplands, and that the only requisite for such a lease was its formal execution by the state. Such facts being the case, within the reasoning of *State ex rel.*

*Billings v. Bridges*, 22 Wash. 64, 60 Pac. 60, 79 Am. St. 914, where having the decision in the *Allen* case before it, this court held that where an applicant to purchase tide lands has complied with all the preliminary requirements of the law he has acquired a vested right in such lands.

There is a distinction between the granting of a privilege which may or may not be exercised, and the exercise of that privilege by the person upon whom it has been conferred. In the one case, the state merely confers a right the acceptance of which is optional. In the other, the option has been exercised, and the faith and credit of the state has become involved in its fulfillment. There is nothing in the *Allen* case nor in the *Waterway* case which is authority for any theory that the upland landowner having exercised his right of preference, either of purchase or of lease, fulfilled all the requirements of the law, and awaiting only the state's execution of its part, has not a vested right in such execution and the rights thus to be acquired.

That the right or interest is one capable of being acquired in condemnation proceedings is decided in the *Hulme* case, where the right to acquire the lease of the harbor area as well as the tide lands was involved, and the court referred to it as an *additional item of damage* in saying, "to which will be added the value of their statutory right to lease the harbor area upon which it abuts." It has never been held that in order to be the object of condemnation proceedings and capable of being appropriated therein, the thing sought shall be real estate or "earth" in some of its various forms in order to come within the statutory requirement of "land" or "interest in land," or "contracts relating thereto" as generally expressed. In *State ex rel. Burrows v. Superior Court*, 48 Wash. 277, 93 Pac. 423, 125 Am. St. 927, 17 L. R. A. (N. S.) 1005, "riparian rights, rights of access, right of light and air, and other kindred and intangible rights appurtenant to real estate," were spoken of as being objects

of condemnation for public use, citing Lewis on Eminent Domain, page 56.

Finding no error in the decree reviewed, the writ is denied and the decree affirmed.

Gose and Fullerton, JJ., concur.